Laura King
7 Mergenthaler Road
Montana City, MT 59634
laurahelenking@gmail.com
MT Bar # 13574

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES and NATIVE ECOSYSTEMS COUNCIL,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL MUNOZ, Rocky Mountain District Ranger, Helena-Lewis and Clark National Forest; BILL AVEY, Supervisor, Helena-Lewis and Clark National Forest; U.S. FOREST SERVICE,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF |

1

I.  INTRODUCTION

1. This is a civil action for judicial review under the citizen suit provisions of the Administrative Procedure Act of the Forest Service's (USFS) authorization of the Elk Smith Project (Project) on the Lewis and Clark portion of the Helena-Lewis and Clark National Forest (Forest).

2. Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council attest that the decision approving the Project is arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.

3. Defendant's approval of the Project and corresponding documents as written violate the National Environmental Policy Act (NEPA), 42 U.S.C. § 4331 et seq., the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 et seq., and the Roadless Rule, 66 Fed. Reg. 3244 (Jan. 12, 2001).

4. Plaintiff seeks a declaratory judgment, injunctive relief, the award of costs, and expenses of suit, including attorney and expert witness fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and/or such other relief as this Court deems just and proper.

II.  JURISDICTION

6. This action arises under the laws of the United States and involves the United States as a Defendant. Therefore, this Court has subject matter

jurisdiction over the claims specified in this Complaint pursuant to 28 U.S.C. §§ 1331, 1346.

7. An actual controversy exists between Plaintiffs and Defendants. Plaintiffs' members use and enjoy the Forest for hiking, fishing, hunting, camping, photographing scenery and wildlife, and engaging in other vocational, scientific, spiritual, and recreational activities. Plaintiffs' members intend to continue to use and enjoy the area frequently and on an ongoing basis in the future.

8. The aesthetic, recreational, scientific, spiritual, and educational interests of Plaintiffs' members have been and will be adversely affected and irreparably injured if Defendants implement the Project. These are actual, concrete injuries caused by Defendants' failure to comply with mandatory duties under NEPA, the APA, and the Roadless Rule. The requested relief would redress these injuries and this Court has the authority to grant Plaintiffs' requested relief under 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. §§ 705 & 706.

9. Plaintiffs fully participated in the available administrative review processes for the Project. Thus, they have exhausted administrative remedies. The Court therefore has jurisdiction to review Plaintiffs' APA claims.

## III.   JURISDICTION

10. Venue in this case is proper under 28 U.S.C. § 1391(e) and Local Rule 3.2(b). Defendant Munoz resides in Teton County, which is within the Great Falls Division of the United States District Court for the District of Montana.

## IV.   PARTIES

11. Plaintiff ALLIANCE FOR THE WILD ROCKIES is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies bioregion, its native plant, fish, and animal life, and its naturally functioning ecosystems. Its registered office is located in Missoula, Montana. The Alliance has over 2,000 individual members, many of whom are located in Montana. Members of the Alliance observe, enjoy, and appreciate Montana's native wildlife, water quality, and terrestrial habitat quality, and expect to continue to do so in the future, including in the Project area. Alliance's members' professional and recreational activities are directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems. Alliance for the Wild Rockies brings this action on its own behalf and on behalf of its adversely affected members.

12. Plaintiff NATIVE ECOSYSTEMS COUNCIL (NEC) is a non-profit Montana corporation with its principal place of business in Three Forks, Montana. Native Ecosystems Council is dedicated to the conservation of natural resources on public lands in the Northern Rockies. Its members use and will continue to use the Project Area for work and for outdoor recreation of all kinds, including hiking, fishing, hunting, camping, and photographing scenery and wildlife. Defendants' unlawful actions adversely affect Native Ecosystems Council's organizational interests, as well as its members' use and enjoyment of the Project Area. Native Ecosystems Council brings this action on its own behalf and on behalf of its adversely affected members.

13. Defendant MICHAEL MUNOZ is the District Ranger for the Rocky Mountain Ranger District on the Helena-Lewis and Clark National Forest, and is the decision-maker who signed and authorized the Elk Smith Project decision.

14. Defendant BILL AVEY is the Supervisor for the Helena-Lewis and Clark National Forest, and is the decision-maker who denied the administrative objections filed against the Project.

15. Defendant UNITED STATES FOREST SERVICE (USFS) is an administrative agency within the U.S. Department of Agriculture, and is

responsible for the lawful management of our National Forests, including the Helena-Lewis and Clark National Forest.

## V. STATUTORY AND REGULATORY BACKGROUND

A. The National Environmental Policy Act

16. NEPA, 42 U.S.C. §§ 4321–4370f, is our "basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). It makes environmental protection a part of the mandate of every federal agency. 42 U.S.C. § 4332(1).

17. NEPA seeks to ensure that federal agencies take a "hard look" at environmental concerns. One of NEPA's primary purposes is to ensure that an agency, "'in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts.'" *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

18. NEPA also "guarantees that the relevant information [concerning environmental impacts] will be made available to the larger audience," including the public, "that may also play a role in the decisionmaking process and the implementation of the decision." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

B. Administrative Procedure Act

19. Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A reviewing court shall also "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

C. The Roadless Rule

16. All Project units are Inventoried Roadless Areas protected by the Roadless Rule. 66 Fed. Reg. 3244 (Jan. 12, 2001).

17. Inventoried Roadless Areas provide clean drinking water and function as biological strongholds for populations of threatened and endangered species.

18. Inventoried Roadless Areas provide large, relatively undisturbed landscapes that are important to biological diversity and the long-term survival of many at risk species.

19. Inventoried Roadless Areas provide opportunities for dispersed outdoor recreation, opportunities that diminish as open space and natural settings are diminished elsewhere.

20. Inventoried Roadless Areas provide reference areas for study and research.

21. The following values or features may characterize Inventoried Roadless Areas: high quality of undisturbed soil, water, and air; sources of public drinking water; diversity of plant and animal communities; habitat for threatened, endangered, proposed, candidate, and sensitive species and for those species dependent on large, undisturbed areas of land; Primitive, Semi-Primitive Non-Motorized, and Semi-Primitive Motorized classes of dispersed recreation; reference landscapes; natural appearing landscapes with high scenic quality; traditional cultural properties and sacred sites; other locally identified unique characteristics.

22. The Roadless Rule prohibits timber harvesting (the cutting, sale, or removal of timber) in Inventoried Roadless Areas except for clearly defined, limited purposes.

23. The Roadless Rule states in part:

> Prohibition on timber cutting, sale, or removal in inventoried roadless areas.
>
> (a) Timber may not be cut, sold, or removed on inventoried roadless areas of the National Forest System, except as provided in paragraph (b) of this section.

    (b) Notwithstanding the prohibition in paragraph (a) of this section, timber may be cut, sold, or removed in inventoried roadless areas if the Responsible Official determines that one of the following circumstances exists. The cutting, sale, or removal of timber in these areas is expected to be infrequent.

        (1) The cutting, sale, or removal of generally small diameter timber is needed for one of the following purposes and will maintain or improve one or more of the roadless area characteristics as defined in § 294.11.

            (i)      To improve threatened, endangered, proposed, or sensitive species habitat; or

            (ii)     To maintain or restore the characteristics of ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects, within the range of variability that would be expected to occur under natural disturbance regimes of the current climatic period;

        (2) The cutting, sale, or removal of timber is incidental to the implementation of a management activity not otherwise prohibited by this subpart;

        (3) The cutting, sale, or removal of timber is needed and appropriate for personal or administrative use, as provided for in 36 CFR part 223; or

        (4) Roadless characteristics have been substantially altered in a portion of an inventoried roadless area due to the construction of a classified road and subsequent timber harvest. Both the road construction and subsequent timber harvest must have occurred after the area was designated an inventoried roadless area and prior to January 12, 2001. Timber may be cut, sold, or removed only in the substantially altered portion of the inventoried roadless area.

36 C.F.R. § 294.13 (2005).

24. The Roadless Rule prohibits timber harvesting in Inventoried Roadless Areas because timber harvest is one of the activities (along with road construction and reconstruction) that has the greatest likelihood of altering and fragmenting landscapes, resulting in loss of roadless area values and characteristics.

25. At 294.13(b)(1)(ii), the Roadless Rule makes an exception to the prohibition on timber harvesting for the thinning of small diameter trees that became established as a result of missed fire return intervals because such trees increase the likelihood of uncharacteristic wildfire effects.

26. At 294.13(b)(2), the Roadless Rule makes an exception to the prohibition on timber harvesting when incidental to implementation of a management activity not otherwise prohibited by the Rule. As described in the Rule preamble, such management activities include maintenance of trails or utility corridors, removal of hazard trees, and survey and maintenance of property boundaries.

D. Project and Project Area

27. The Elk Smith Project Area is a 24,220 acre area located within the 395,440 acre portion of the Bear-Marshall-Scapegoat-Swan Inventoried Roadless Area managed by the Helena-Lewis and Clark National Forest.

28. The Scapegoat Wilderness, which is the southern part of the Bob Marshall Wilderness Complex, lies immediately to the west of the Project area.

29. The Project area is located in the Northern Continental Divide Ecosystem Grizzly Bear Recovery Zone/Primary Conservation Area.

30. Listed and proposed species that may be present in the Project area include grizzly bears and lynx.

31. The Project area is almost entirely within the perimeter of the 1988 Canyon Creek Fire.

32. The Project Decision Notice (Decision) was signed on January 26, 2021, and authorizes the implementation of Alternative 2, the proposed action, from the Elk Smith Project Final Supplemental Environmental Assessment (EA).

33. The project consists of 10,329 acres of prescribed burning across 15 units.

34. All 10,329 treatment acres fall within the Inventoried Roadless Area boundary.

35. Helicopters will be used for burning operations in 10 units—Units 3, 4, 5, 6, 8, 9, 11, 13, 14, and 15—amounting to up to 7,544 acres of helicopter-ignited burning.

36. In addition, tree cutting of trees up to 7" in diameter at breast height will occur in Units 1, 2, 7, 9, and 11, for a total of 2,787 acres.

37. The Project Decision states that the Forest Service plans to begin implementation in 2021 and continue for five to ten years.

38. The Forest Service conducted scoping for the Project in 2013.

39. The Forest Service produced a draft EA for public comment in 2016.

40. The Forest Service produced the EA and draft Decision Notice for the Project in April 2019.

41. The final Decision was signed and issued on November 1, 2019. At that time, the Forest Service also issued a revised EA for the Project.

42. The Forest Service withdrew the final Decision Notice on June 10, 2020.

43. The Forest Service issued a Supplemental EA and Supplemental Project Draft Decision Notice in September 2020.

44. A final Decision based on the Supplemental EA was signed and issued on January 26, 2021.

E. Justification for Tree-Cutting

45. The Roadless Rule prohibits timber harvesting (the cutting, sale, or removal of timber) in Inventoried Roadless Areas except for clearly defined, limited purposes.

46. In its November 2019 EA, the Forest Service justified the tree-cutting authorized by the Project by relying on the exception at 294.13(b)(1)(ii), which allows tree-cutting "to maintain or restore the characteristics of ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects, within the range of variability that would be expected to occur under natural disturbance regimes of the current climatic period."

47. As described in the preamble to the Roadless Rule, 294.13(b)(1)(ii) allows the thinning of small diameter trees that became established as a result of missed fire return intervals.

48. The fire return interval for the Project area is 35-100 years between fires.

49. The Project area experienced a fire in 1988, or 33 years ago.

50. The Project area has not yet missed a fire return interval.

51. According to a 2010 Forest Service landscape assessment underlying the Project, approximately 58% of the analysis area is in Fire Regime Condition Class 1—within the range of historical fire conditions—and only 5% percent is in Fire Regime Condition Class 3—highly departed from historical fire conditions.

52. In an April 2020 lawsuit, Alliance for the Wild Rockies ("Alliance") claimed that the Forest Service's reliance on the exception at 294.13(b)(1)(ii) was arbitrary and capricious.

53. In June 2020, the Forest Service withdrew the Decision Notice for the Project to conduct more analysis.

54. In a Final Supplemental Environmental Assessment published in September 2020, the Forest Service "clarifi[ed] the 2001 Roadless Rules Exception that allows the project."

55. In its September 2020 Final Supplemental Environmental Analysis, the Forest Service no longer relies on the exception at 294.13(b)(1)(ii) to justify the Project's timber-cutting. Instead, the Forest Service relies on 294.13(b)(2): "The cutting, sale, or removal or timber is incidental to the implementation of a management activity not otherwise prohibited by this subpart."

## VI.   CLAIM FOR RELIEF

*The Forest Service's approval of tree-cutting in an Inventoried Roadless Area violates NEPA, the APA, and the Roadless Rule.*

56. All previous paragraphs are incorporated by reference.

57. All Project units are located within an Inventoried Roadless Area.

58. The Project involves tree-cutting in Units 1, 2, 7, 9, and 11, for a total of 2,787 acres of Inventoried Roadless Areas.

59. The Roadless Rule prohibits timber harvesting in Inventoried Roadless Areas.

60. No exception to timber harvesting in Inventoried Roadless Areas is applicable to the Project.

61. The Forest Service's approval of timber cutting in Inventoried Roadless Areas violates NEPA, the APA, and the Roadless Rule.

## VII. RELIEF REQUESTED

For the above-stated reasons, Plaintiffs request that this Court award the following relief:

A. Declare that the Project violates the law.

B. Vacate the Project decision or enjoin implementation of the Project.

C. Award Plaintiffs their costs, expenses, expert witness fees, and reasonable attorney fees under the ESA and/or under EAJA; and

D. Grant Plaintiffs any such further relief as may be just, proper, and equitable.

Respectfully submitted this 28th day of April, 2021.

*/s/ Laura King*
Laura King

Attorney for Plaintiffs