**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, *et al.*, | **CV-21-46-GF-BMM** |
| Plaintiffs, | |
| vs. | **ORDER** |
| MICHAEL MUNOZ, in his capacity as Rocky Mountain District Ranger for the Helena-Lewis and Clark National Forest, *et al.*, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council (collectively "Alliance for the Wild Rockies") have moved for summary judgment. (Doc. 17). Defendants Bill Avey, Michael Munoz, and the United States Forest Service (collectively "the Forest Service") oppose this motion and have filed a cross-motion for summary judgment. (Doc. 27).

## FACTUAL AND LEGAL BACKGROUND

The Forest Service authorized the Elk Smith Project on January 26, 2021, and issued a Finding of No Significant Impact. (Doc. 25 at 3). The Forest Service

designed the Elk Smith Project to remedy damage done to the Helena-Lewis and Clark National Forest by a high intensity fire in 1988 ("the Canyon Creek fire"). *Id.* The Elk Smith Project addresses fuel accumulation in the Bear-Marshall-Scapegoat-Swan Inventoried Roadless Area ("the Roadless Area") which surrounds the Bob Marshall Wilderness Complex. (Doc. 17-1 at 5).

The Elk Smith Project proposes to improve conditions for fire management and reduce the risk of high-intensity, high-severity wildfires by using prescribed burning on 15 units that cover 10,331 acres in patches of 20 to 100 acres. (Doc. 25 at 4). The Elk Smith Project also proposes to treat 5 of the 15 units by hand-slashing small conifers, no larger than 7 inches in diameter-at-breast-height, prior to burning. *Id.* The Elk Smith Project does not involve any commercial sale of timber. *Id.* at 6.

The Forest Service designates Inventoried Roadless Areas ("IRAs") pursuant to 36 C.F.R. § 294.11. *Id.* The Roadless Area Conservation Rule ("the Roadless Rule"), promulgated by the Department of Agriculture in 2001, controls the circumstances under which cutting IRA timber is permissible. *Id.* Timber cutting is prohibited in an IRA except under the following circumstances:

> (1) The cutting, sale, or removal of generally small diameter timber is needed for one of the following purposes and will maintain or improve one or more of the roadless area characteristics as defined in § 294.11.

> (i) To improve threatened, endangered, proposed, or sensitive species habitat; or
> (ii) To maintain or restore the characteristics of ecosystem composition and structure, such as to reduce the risk of uncharacteristic wildfire effects, within the range of variability that would be expected to occur under natural disturbance regimes of the current climatic period;
>
> (2) The cutting, sale, or removal of timber is incidental to the implementation of a management activity not otherwise prohibited by this subpart

36 C.F.R. § 294.13(b) (2005).

The Forest Service published a Preliminary Environmental Assessment ("Draft EA") on the Elk Smith Project for comment in August 2016. *Id.* at 7. Alliance for the Wild Rockies submitted comments on the Draft EA. *Id.* Alliance for the Wild Rockies argued that: the draft EA failed to "address why this proposal does not violate the [Roadless Rule]. There are two serious problems with compliance with this Rule, the first being management to reduce natural fires in IRAs, and the second the planned destruction of habitat for 2 threatened species within the IRA." *Id.* Alliance for the Wild Rockies went on to comment "the Forest Service has fallen far short of demonstrating that the proposed burning is needed to restore unnatural conditions. We believe this project is a clear violation of the [Roadless Rule], and should not go forward." *Id.*

The Forest Service published the Final Environmental Assessment ("Final EA") for comment in April 2019. *Id.* Alliance for the Wild Rockies again

submitted an objection letter. *Id.* at 9–10. The Forest Service signed a Decision Notice in November of 2019. *Id.* at 7. In the Final EA, the Forest Service relied on an exception to the Roadless Rule that allows cutting "small diameter" trees to reduce "the risk of uncharacteristic wildfire effects." (Doc. 17-4 at 6); *see* 36 C.F.R. § 294.13(b)(1)(ii) (2005).

Alliance for the Wild Rockies filed a lawsuit in April 2020 challenging the Forest Service's reliance on the 36 C.F.R. § 294.13(b)(1)(ii) exception. (Doc. 17-4 at 6). The Deciding Official withdrew the Decision Notice on June 10, 2020, to conduct additional analysis. (Doc. 25 at 7). Alliance for the Wild Rockies asserts that the Forest Service withdrew the final EA in response to its lawsuit. (Doc. 17-1 at 14).

The Forest Service published a Final Supplemental Environmental Assessment ("Supplemental EA") in September 2020. (Doc. 25 at 7). The Supplemental EA "clarifie[d] the 2001 Roadless Rule Exception that allows the project." (Doc. 17-4 at 7 (quoting Elk Smith-0023225)). The Supplemental EA relies on 36 C.F.R. § 294.13(b)(2) ("the subsection (b)(2) exception") to categorize the Elk Smith Project timber cutting as "incidental" to the fire control efforts. *Id.* Alliance for the Wild Rockies once again objected. (Doc. 24 at 9). The Forest Service signed its final decision approving the Elk Smith Project in January 2021. (Doc. 17-4 at 7).

Alliance for the Wild Rockies filed suit in this Court in April 2021 under the Administrative Procedure Act ("APA"). (Doc. 1). Alliance for the Wild Rockies seeks a declaratory judgment that the Forest Service's plan for tree cutting in the Roadless Area violates the APA, the National Environmental Policy Act ("NEPA"), and the Roadless Rule. *Id.* at 14–15. Alliance for the Wild Rockies asks the Court to vacate the Elk Smith Project decision or enjoin its implementation. *Id.* at 15.

## LEGAL STANDARDS

The Court shall grant summary judgment if the movant shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Courts review agency decisions under the Roadless Rule under the standards set out in the Administrative Procedure Act ("APA"), and "must set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 964 (9th Cir. 2002) (citing 5 U.S.C. § 706).

## DISCUSSION

The sole issue presented by this case is whether the timber cutting proposed by the Elk Smith Project violates the Roadless Rule. No factual issues remain at play, and, therefore, summary judgment proves appropriate. The Forest Service

also argues, as a threshold matter, that Alliance for the Wild Rockies failed to raise this claim during the administrative process and therefore it cannot pursue the claim in this Court. The Court will address the Forest Service's argument before addressing the merits.

## I.    Whether Alliance for the Wild Rockies is precluded from raising its claim in this Court.

"[C]laims raised at the administrative appeal and in the federal complaint must be so similar that the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, the same claims now raised in federal court." *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 899 (9th Cir. 2002). General comments do not suffice because the connection between the concerns expressed during an administrative proceeding and the issues raised in court cannot be "too attenuated." *Great Basin Mine Watch v. Hankins*, 456 F.3d 955 (9th Cir. 2006).

The Forest Service argues that Alliance for the Wild Rockies failed to adequately identify its concerns during the administrative process, and, therefore, has waived its claim. (Doc. 24 at 18). The Forest Service categorizes Alliance for the Wild Rockies's complaint that the Elk Smith Project violated the Roadless Rule as a "general comment," and asserts that, to put the Forest Service on notice of its claim, Alliance for the Wild Rockies must have complained that the proposed

timber cutting does not fit within the subsection (b)(2) exception as it now does in its summary judgment brief. (Doc. 24 at 19).

The Forest Service argues first that Alliance for the Wild Rockies has waived its claim by virtue of submitting an overbroad comment. The Forest Service further argues the perceived lack of clarity in Alliance for the Wild Rockies's comments constitutes failure to exhaust administrative remedies. *See Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 965 (9th Cir. 2002). The Forest Service misapprehends the level of clarity with which Alliance for the Wild Rockies needed to articulate its objection to the Elk Smith Project. Claimants must raise their problems with sufficient clarity to provide the Forest Service with a fair opportunity to rule. Claimants may meet this requirement "using general terms rather than specific legal arguments." *All. for Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1189 (D. Mont. 2013).

Alliance for the Wild Rockies raised its objections to the planned project at every opportunity, clarifying that it believed the tree cutting violated the Roadless Rule. *See* (Doc. 25 at 8). The Forest Service argues that Alliance for the Wild Rockies "vaguely" asserted its objections "without explaining why they maintain that tree cutting within an IRA would violate the Roadless Rule." (Doc. 24 at 19). The Roadless Rule clearly prohibits timber cutting. *See* 36 C.F.R. § 294.13(a) ("Timber may not be cut, sold, or removed in inventoried roadless areas of the

National Forest System, except as provided in paragraph (b) of this section."). The Forest Service, not Alliance for the Wild Rockies, bears the burden of justifying timber cutting in an IRA when administrative law generally prohibits it. The Forest Service did so by "clarifying" in the Supplemental EA under which exception to the Roadless Rule the Elk Smith Project operated. (Doc. 17-4 at 7 (quoting Elk Smith-0023225)). The fact that the Forest Service referenced the exception to the Roadless Rule that now stands at the heart of this lawsuit in its response to Alliance for the Wild Rockies's objection supports the fact that Alliance for the Wild Rockies's objection placed the Forest Service on notice of the current claim.

The Forest Service cites to *Kruger*, in which the court determined that "elk security" proved "too broad a term" to put the Forest Service on notice of a claim that elk security buffers needed to be expanded. *All. for Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1189–90 (D. Mont. 2013). The Forest Service asserts that noncompliance with the Roadless Rule provides a similarly overbroad complaint. The Forest Service overlooks a key part of *Kruger*'s holding. *Kruger* held that claims must be similar enough to put the Forest Service on notice but that "Plaintiffs were *not* required to point to the specific regulation or statute they believe will be violated." *All. for Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1190 (D. Mont. 2013) (emphasis added). Alliance for the Wild Rockies, in *Kruger*, identified an issue using an undefined, general term. *Id.* at 1189 (explaining the

many different issues that "elk security" could potentially involve). Its objection

here pointed to a specific administrative provision implementing the Roadless Rule

that prohibits cutting timber in IRAs. Alliance for the Wild Rockies objected to

what it believed to be a misapplication of the Roadless Rule. It did not need to

mention a specific portion of an exception to the Roadless Rule to exhaust its

administrative remedies.

**II.    Whether cutting proposed by the Elk Smith Project violates the Roadless
Rule.**

Timber may not be cut, sold, or removed in IRAs of the National Forest

System unless the cutting falls within one of a small number of enumerated

exceptions. 36 C.F.R. § 294.13(a) (2005). The Forest Service relies on the

subsection (b)(2) exception under which timber cutting is allowed so long as the

cutting is "incidental to the implementation of a management activity not otherwise

prohibited by the Roadless Rule." 36 C.F.R. § 294.13(b)(2). The Preamble of the

Roadless Rule sets forth a number of permissible management activities, including

but not limited to "fire line construction for wildland fire suppression or control of

prescribed fire." 66 Fed. Reg. 3244, 3258.

The parties do not dispute that wildfire prevention presents a permissible

management activity. The parties first disagree as to whether the subsection (b)(2)

exception represents the proper exception to apply to a wildfire prevention project.

The parties further disagree whether the subsection (b)(2) exception applies in that

9

the timber cutting proposed by the Elk Smith Project truly proves "incidental" to the permissible controlled burn.

### a. Whether the Park Service permissibly applied the subsection (b)(2) exception to the Elk Smith Project.

Alliance for the Wild Rockies argues that the Forest Service inappropriately used the subsection (b)(2) exception to justify the timber cutting on the Elk Smith Project. (Doc. 32). Alliance for the Wild Rockies argues that the subsection (b)(1) exception provides the only appropriate avenue by which the Forest Service can justify timber cutting relating to the prevention of wildfire. *Id.* at 2. Alliance for the Wild Rockies points to language in subsection (b)(1)(ii) that specifically mentions the reduction of "the risk of uncharacteristic wildfire effects" as a permissible purpose for timber cutting. C.F.C. § 294.13.

Alliance for the Wild Rockies failed to raise this argument in its brief and argued this point for the first time at the February 7, 2022, hearing. *See* (Doc. 32 at 2). It subsequently submitted supplemental authority and argument in which it relied on a recent Ninth Circuit decision—*Los Padres ForestWatch v. Forest Service*, 25 F.4th 649 (9th Cir. 2022). In *Los Padres*, the Ninth Circuit determined that planned timber cutting under the subsection (b)(1) exception was arbitrary and capricious because the Forest Service failed to explain how 21-inch-diameter trees constituted "small diameter timber." *Id.* at *6. *Los Padres* contains no discussion

as to whether the subsection (b)(1) exception provides the sole vehicle to allow tree cutting for wildfire management.

*Los Padres* fails to support the argument presented here by Alliance for the Wild Rockies. *Los Padres* discusses the applicability of the subsection (b)(1) exception to a project designed for wildfire prevention. The Forest Service used this wildfire prevention exception to justify the planned fuelbreak project in that case. *Id.* at *5. Nothing in the Ninth Circuit's analysis in *Los Padres* indicates that subsection (b)(1) represents the sole exception applicable to projects concerning wildfire management and prevention.

Alliance for the Wild Rockies's argument fails in other respects. The wording of C.F.R. § 294.13(b) allows timber to be cut "if the Responsible Official determines that *one of* the following circumstances exists." C.F.R. § 294.13 (emphasis added). This language would seem to indicate that the Responsible Official has its pick of exceptions so long as the proposed cutting adheres to the requirements of the exception. The Preamble to the Roadless Rule bolsters this interpretation by listing "fire line construction for wildland fire suppression or control of prescribed fire" as "examples of these [management] activities" to which timber cutting may be incidental. *See* 66 F.R. 3244-01.

The Court sees no reason why the Forest Service should be limited to the subsection (b)(1) exception simply because it uses wildfire prevention as an

example when the Preamble to the Roadless Rule specifically lists "control of prescribed fire" as a management activity that falls under the subsection(b)(2) exception. Subsection (b)(2) provides a valid exception under which the Forest Service may justify cutting timber as a part of a controlled burn. The Court must decide whether the subsection (b)(2) exception applies to the timber cutting proposed by the Elk Smith Project.

**b.  Whether the timber cutting proposed by the Elk Smith Project is incidental to the controlled burn.**

The parties propose two dueling definitions for "incidental." Alliance for the Wild Rockies proposes that "incidental" means "being likely to ensue as a chance or minor consequence" or "occurring merely by chance or without intention or calculation." (Doc. 17-1 at 20). The Forest Service proposes that "incidental" means "secondary to the primary purpose of the permitted activity." (Doc. 36 at 3).

The Roadless Rule fails to define "incidental." Courts must give a term its ordinary meaning when the term goes undefined in a statute. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). Courts often turn to dictionaries to establish a word's ordinary meaning. *See id.*

Alliance for the Wild Rockies relies on *Taniguchi* to support its definition of "incidental," which has been derived from the definitions in Merriam-Webster's Eleventh Collegiate Dictionary. (Doc. 27 at 6). The U.S. Supreme Court made clear in *Taniguchi*, however, that one definition from one dictionary may not be

12

sufficient to "establish that the word is *ordinarily* understood in that sense." *Taniguchi*, 566 U.S. at 568. The U.S. Supreme Court conducted a "survey of the relevant dictionaries" and looked to the "statutory context" to derive a definition for the contested term that was "far more natural" and reflected the way the term was "normally understood." *Id.* at 569–70.

The Forest Service points to several alternative dictionary sources that support its definition for "incidental," including an alternative "legal definition" of "incidental" provided by Merriam Webster's as "subordinate or secondary in importance or position." (Doc. 30 at 6 (citing *Incidental*, Merriam-Webster, https://www.merriam-webster.com/dictionary/incidental (last visited February 28, 2022)); *see also Incidental*, Black's Law Dictionary (11th ed. 2019) (defining "incidental" as "subordinate to something of greater importance"); Oxford's Lexico U.S. Dictionary, https://www.lexico.com/en/definition/incidental (last visited February 1, 2022) (defining "incidental" primarily to mean "accompanying but not a major part of something"); *Incidental*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/incidental (last visited February 1, 2022) (defining "incidental" as "less important than the thing something is connected with or part of" and "happening by chance, *or in connection with something of greater importance*" (emphasis added)).

13

The Forest Service's definition of "incidental" also aligns better with the definition provided in *Hogback Basin Preservation Ass'n v. United States Forest Service*, the only case to previously analyze the meaning of "incidental" as used in the subsection (b)(2) exception. 577 F.Supp.2d 1139 (W.D. Wash. 2008). Alliance for the Wild Rockies seeks to distinguish *Hogback* from this case. Alliance for the Wild Rockies argues that the IRA at issue in *Hogback* "suffer[ed] from a conflicting status." (Doc. 27 at 10–11). The land in *Hogback* was both an IRA and simultaneously designated for Developed Recreation management. *Hogback*, 577 F. Supp. 2d at 1148. The Court finds this argument unpersuasive. The dual nature of the land at issue in *Hogback* may have proved determinative in weighing whether the timber cutting in that case proved "incidental" to the primary purpose. The dual nature of the land had no impact on the statutory interpretative method by which the district court defined "incidental." *Hogback*'s analysis of "incidental" proves instructive in this case.

The district court in *Hogback* rejected the plaintiff's proposed definition of incidental to mean "non-essential" or "unnecessary." *Hogback*, 577 F. Supp. 2d at 1152. The district court determined that such a definition "would excise the section 294.13(b)(2) exemption every time it is invoked for a meaningful purpose." *Id.* Alliance for the Wild Rockies's proposed definition similarly proves over-restrictive. The definition proposed by Alliance for the Wild Rockies would make

14

timber cutting impermissible whenever it was undertaken in a planned and purposeful manner. (Doc. 17-1 at 20–21). Such a definition would render the subsection (b)(2) exception meaningless.

Undertaking a permissible management activity like a controlled burn requires careful planning to ensure that it is done safely and achieves its purpose. In the course of undertaking any wildlife management activity, the Forest Service may foreseeably have to determine whether cutting timber will aid in the project's primary goal. The Forest Service should be encouraged to plan carefully its timber cutting under such circumstances, rather than cutting down timber haphazardly as the need arises. The definition of "incidental" proposed by Alliance for the Wild Rockies would prohibit such careful forethought.

The Court rejects Alliance for the Wild Rockies's argument that a broader definition of "incidental" would swallow the Roadless Rule. The District Court in *Hogback* contemplated this same argument. The district court rejected the Forest Service's proposition that "'incidental' should be read interchangeably with and exclusively as 'secondary.'" *Hogback*, 577 F. Supp. 2d at 1151. *Hogback* accepted that such a broad definition would render the Roadless Rule's prohibition on timber cutting a "virtual nullity." *Id.* The district court concluded that defining "incidental" as "'subordinate' allows for an examination of whether the cutting,

15

removal, or sales of timber is 'attendant in position or significance' to an otherwise authorized activity.'" *Id.* at 1153.

The meaning of "incidental" must be "flexible and dependent upon the specific circumstances of the proposed activity" with the end goal that any timber cutting may not be "so disproportionate" as to "rival or overshadow the primary purpose" of the project. *Id.* The Forest Service's proposed definition of "incidental"—"secondary to the primary purpose of the permitted activity"— allows for a "context-specific" analysis. *Id.*

The district court determined in *Hogback* that cutting approximately 21.5 acres of timber proved incidental to the proposed recreational development for three specific reasons: (1) "every effort has been made to minimize and mitigate how much timber is cut;" (2) a design had been selected that avoided "full vegetation removal;" and (3) the Forest Service was "limiting maintenance techniques to manual methods." *Id.* at 1154.

The Elk Smith Project provides similar, solid parameters to limit the amount of timber cutting necessary to facilitate the controlled burn. The Elk Smith Project proposes to cut approximately 1,393 acres. This vast amount greatly exceeds the 21.5 acres at issue in *Hogback*. The proposed cut still amounts to only 10 to 12 percent of the total project area. (Doc. 25 at 5). The Court emphasizes that the Forest Service may not evade the Roadless Rule and cut down thousands of acres

16

of timber merely by designating a larger project area. The drafters of the Roadless Rule intended a context-sensitive interpretation of "incidental" rather than an absolutist application of the term. *Hogback*, 577 F. Supp. 2d at 1153. The district court in *Hogback* focused on proportionality, using "clear-cutting 700 of the 767 acres in the proposed . . . area" as an example of timber cutting that could never be labeled "incidental" to a permitted purpose. *Id.* The Court must decide whether timber cutting proves proportional to the primary purpose by looking to "the specific circumstances of the proposed activity." *Id.* What "incidental" means in the context of the Elk Smith Project presents a "case-by-case, circumstance-by-circumstance" inquiry.

As the Forest Service conceded in *Hogback*, there will be circumstances in which the cutting, sale or removal of timber would be so disproportionate that no amount of deference to the Forest Service's interpretation of the Roadless Rule would permit such activities to be labeled as "incidental" to the project's primary purpose. *Hogback*, 577 F. Supp.2d at 1153. The Court cautions against any effort by the Forest Service to "issue free passes to cut timber for any authorized activity that involves the cutting of timber." *Id.* This court will apply a "case-by-case, circumstance-by-circumstance" approach to claims of "incidental" cutting of timber in roadless areas. *Id.* Whether a project will be prohibited under the Roadless Rule will "depend on the type of project and how it would be

17

constructed." *Id.* (citation omitted). Any "incidental" timber cutting allowed in a roadless area must be "secondary" to an authorized purpose. *Id.* The Court will assess how the timber cutting fits into the authorized project. *Id.*

The timber cutting proposed by the Elk Smith Project proves incidental to the planned controlled burn based upon the context provided by the entire administrative record. The Elk Smith Project has put in place many of the same limiting measures as the proposed project at issue in *Hogback*. The district court in *Hogback* found these limiting measures to be indicative of "incidental" timber cutting. The Elk Smith Project has endeavored to "minimize and mitigate how much timber is cut" by limiting timber cutting to only five of the fifteen units subject to prescribed burning. (Doc. 25 at 4); *see Hogback*, 577 F. Supp. 2d at 1154.

The Elk Smith Project also limits the trees to be cut to no larger than 7 inches in diameter-at-breast height. This requirement proves consistent with the kind of small diameter trees permissibly cut under other Roadless-Rule-compliant projects. *Cf. Los Padres ForestWatch v. United States Forest Serv.*, 25 F.4th 649 (9th Cir. 2022) (rejecting the categorization of 21-inch diameter trees as "small diameter"). The Elk Smith project also avoids the "full vegetation removal" and "clear-cutting" that concerned the district court in *Hogback* by limiting cutting to small-diameter trees. *Hogback*, 577 F. Supp. 2d at 1153–54. The Elk Smith Project

also proposes to use hand-slashing for timber cutting. This proposal mirrors the "manual methods" used in the *Hogback* project. *Id.* at 1154.

The Forest Service has limited its proposed timber cutting in several well-delineated ways to ensure that it remains secondary to the primary purpose of the controlled burn. The Court finds nothing arbitrary or capricious about the Elk Smith Project's proposed timber cutting in the context of the entire project as presented in the administrative record.

**ORDER**

Accordingly, **IT IS ORDERED** that:

1.  Plaintiffs' Motion for Summary Judgment (Doc. 17) is **DENIED.**

2.  Defendants' Motion for Summary Judgment (Doc. 23) is **GRANTED.**

Dated this 8th day of March, 2022.

_____
Brian Morris, Chief District Judge
United States District Court